Eichardson, Oh. J.,
delivered the opinion of the court:
May 8,1880, Kerwin Wilson filed in this court his petition alleging, in substance, that he was a settler on Fort Eandall military reservation, in Dakota, in part set aside for military purposes and in part transferred to the Department of the Interior by authority of the act of May 18, 1874 (18 Stat. L., 47); that he made improvements thereon which have been appraised at $485.50 by a military board of survey convened at said fort under instructions from the War Department, dated March 3,1871; that he vacated said land and improvements when the military authorities assumed control of the same, wherefore he claims said appraised sum under section 3 of said act.
Said Wilson died at or near the city of Pierre, in the State of South Dakota (then the Territory of Dakota), on or about April 1,1881. It does not appear that administration on his estate has been granted in said State.
June 27, 3892, the present claimant appeared as administrator of said Wilson and filed copies of proceedings in the Supreme Court of the District of Columbia, holding a special term for orphans’ court business, appointing'him as such administrator.
The defendant files a motion in the nature of a motion to strike out the present claimant’s appearance on the ground that the court in this District had no authority to grant letters of administration, and that the appointment by that court is void.
*533 Tbe claimant contends tbat “the letters of administration are regular on their face, and it must be presumed that all the necessary jurisdictional facts were made to appear to the court granting them before they were granted,” relying upon article 12, section 1, of the Constitution of the United States, which provides that “full faith and credit shall be given in each State to the. public acts, records, and judicial proceedings of every other State.”
There have been numerous decisions, State and national, upon that clause of the Constitution, with the result as stated by the Supreme Court in the case of In re Sawyer, (124 U. S. R., 220)—
“As this court has often said: 1 Where a court has jurisdiction it has a right to decide every question which occurs in the casej and whether its decision be correct or otherwise, its judgment, until reversed, is regarded as binding in every other court. But if it act without authority, its judgments and orders are regarded as nullities. They are not voidable, but simply void. (Elliott v. Peirsol, 1 Pet., 328, 340; Wilcox v. Jackson, 13 Pet., 498, 511; Hickey v. Stewart, 3 How., 750, 762; Thompson v. Whitman, 18 Wall., 457, 467.)”
So in several cases it has been held that administration granted without jurisdiction is absolutely void. (Peters v. Peters, 8 Cush., 543; Thayer v. Winchester, 133 Mass., 447; Jefferson R. R. Co. v. Swayne's Adm’r, 26 Ind., 447.)
If, then, the record on its face shows that the District court had no jurisdiction, it must be held that the grant of letters of administration was void.
As appears in his petition for appointment, the claimant alleged that said Wilson died in the State of South Dakota, and his letters grant administration as on the estate of Kerwin Wilson, “ late of South Dakota.”
The domicile of a decedent in his lifetime, in the absence of proof to the contrary, must ordinarily be presumed to be at the place of his decease; therefore it is to be presumed that Kerwin Wilson had a domicile in South Dakota. In such case some court of that State had exclusive jurisdiction to grant principal administration on his estate. Administration thus granted would cover all the estate of the deceased, wherever situated, which the administrator could reduce to possession *534 without suit, according to tbe rule laid down by Chief-Justice Shaw in Hutchins v. State Bank (12 Met., 425):
“We think the general rule of law is that where a will has been proved and an executor has received letters testamentary in the State of the testator’s domicile, the goods, chattels, dioses in action, and generally the personal property of the intestate vests in the executor. He holds them in auter droit certainly, and is bound to inventory them and account for them; but still he has the legal interest in them and the custody and control of them (7 Johns, Ch. ubi. supra); Dawes v. Boyleston, 9 Mass., 337; Rand v. Hubbard, 4 Met., 252; Woolley v. Clark, 1 Dowl. and Ryl., 409, and Barn. and Ald., 744).
“ If, therefore, such executor can take possession of goods and effects in the hands of a bailee of his intestate in another State by the voluntary act of such bailee, or if he can collect a debt from a debtor in another State ivithont the necessity in either case of commencing a suit, he has authority to do so, and may give a good acquittance and discharge.”
The Supreme Court of the United States held the same doctrine in Wyman v. Halstead (109 U. S. R., 656):
“An administrator is of course obliged to demand payment at the place where the bill or note is payable, and he may And difficulty, unless it is payable to bearer, in suing upon it in a place in which he has not taken out administration. But payment to the administrator appointed in the State in which the intestate had his domicile at the time of his death, whether made within or without that State, is good against any administrator appointed elsewhere.” (Wilkins v. Ellett, 9 Wall., 740, and 108, U. S. R.)
It frequently happens that a person dies leaving assets in a State other than that of his domicile which can not be reduced to possession or collected without suit, and the grant of ancillary or auxiliary administration in the former State may become necessary in order to maintain an action.
Ancillary administration is defined to be “A local and subordinate administration of such part of the assets of a decedent as are found within a State other than that of his domicile, and which the law of the State where they are found requires to be collected under its authority in order that they may be applied first to satisfying the claims of its own citizens,'instead of requiring the latter to resort to the jurisdiction of principal administration to obtain payment, the surplus, after satisfying such claims, being remitted to the place of principal administration.” (Century Dictionary.)
*535 It is wholly independent of a principal administration, and may be granted before the latter, which may or may not be taken out subsequently. (Stevens, administrator, v. Gaylord, 11 Mass., 256, 264; Bowdoin v. Holland, 10 Cush., 17; Green v. Ridgely, 23 Texas, 540.)
But ancillary- administration extends only to the estate within its jurisdiction, and does not, like that of the principal administration, cover property situated elsewhere. To be valid it must appear that the deceased left estate within its jurisdiction.
An ancillary appointment where there are no assets to which it can apply is void. (Crosby v. Levitt, 4 Allen, 410; Phinney v. McGregory, 102 Mass., 186, 189.)
Technical accuracy would seem to require that an ancillary administration should be limited, in terms, to property within the State of the appointment, or in the city of Washington to the estate in the District of Columbia. The claimant’s appointment is not so limited in form. That, however, is immaterial, since, as tlie record declares the decedent to be “ late of South Dakota,” the ancillary character of the appointment is just as apparent.
The question then arises whether or not it appears that the deceased left local assets in the District of Columbia.
Had the claimant’s petition for appointment alleged simply that the deceased left assets in the District to be administered, and the court had found the facts so to be, it is at least doubtful if this court or any other court could go behind the finding in a collateral proceeding and receive evidence as to what assets the deceased did leave. It is not easy to see bow the negative, that deceased left no assets in the District, could be proved affirmatively so as to contradict the positive finding of the court. Evidence of the assets relied upon to confer jurisdiction is not required to be a matter of record, and the amount and value of such assets are immaterial.
In Maryland, in the case of Raborg, administrator, v. Hammond (2 Harris & Gill, 49), cited and quoted in Eslin’s Case (22 C. Cls. R., 163), it was held that in a collateral proceeding it was not competent to prove that the plaintiff’s appointment as administrator was granted in a county other than that in which the deceased resided at the time of his death, because the *536 orphans’ court granting the administration had found otherwise. A careful examination of the case shows that the records of the orphans’ court set out deceased’s residence to be in the county in which that court had jurisdiction.
It is not necessary in this case to determine how far and under what circumstances the records of the court granting administration can be contradicted in a collateral proceeding in matters of fact found by such court, and we express no opinion thereon.
The claimant’s petition for appointment as administrator contains no general allegations that the deceased left assets in the District of Columbia, but makes representation as follows:
“ Said Kerwin Wilson died indebted to your petitioner for services in the prosecution of a certain claim against the United States for certain improvements made by him on the Fort Randall military reservation, in the said Territory of Dakota, of which he was dispossessed by the military authorities of the United States; and your petitioner', in pursuance of that employment, had, previous to the time of said Kerwin Wilson’s death, filed a petition in the Court of Claims and was diligently engaged in preparing the evidence in the case, and had expended the sum of five dollars for printing and other expenses connected with the prosecution of said claim.”
Thus it appears that the only assets relied upon by the petitioner or found by the court upon which jurisdiction was founded was a claim against the United States in suit and pending in the Court of Claims. The question, then, is whether or not such a claim against the United States is a local asset in the District of Columbia. As we have before shown, all the assets of a deceased person, including debts due to him, belong to the principal administrator appointed in the jurisdiction of Ms domicile and may be taken possession of or collected by him if he can do so without the aid of a suit. Especially is this so with claims against the Government, which is said to be ubiquitous and pays its debts anywhere in the United States.
If, however, it becomes necessary to institute a suit to recover assets in a State other than that of the domicile of the deceased, administration must be obtained in such other State, as, generally, an administrator can bring actions only in the jurisdiction of his appointment. The only exception to this rule known to us is in this District, where executors and adminis *537 trators elsewhere appointed are authorized “ to maintain any suit or action and to prosecute and recover any claim in the District of Columbia in the same manner as if letters testamentary or of administration had been granted to such person or persons by the proper authority in said District.” (Act of 1887, February 28, ch. 281, 1 Supp. R. S., 2d ed., 548.)
Hence the reason for ancillary administration whenever suits are to be brought outside of the jurisdiction of the domicile, at least elsewhere than in the District of Columbia. The necessity of bringing suit makes debts local assets.
.We are unable to see how a claim due from the United States can be a local asset in the District of Columbia. By the act of 1887, March 3, chapter 359 (1 Supp. R. S., 2d ed., 559, 560), the district and circuit courts have jurisdiction of claims against the United States concurrently with the Court of Claims, the former where the amount does not exceed $1,000 and the latter where it does not exceed $10,000. By the third section of the act, suit in the local courts — the circuit and district courts — can be instituted only u in the district where the plaintiff resides.” So a suit could never have been maintained in the Supreme Court of the District of Columbia, which has the powers of both the circuit and the district courts of tlie United States, because the claimant resided in South Dakota. Moreover, a suit upon the claim was already pending at the time of his death in the Court of Claims, which is not a local but a national court with jurisdiction throughout the United States. A claim in suit in the latter court is not a local asset in the District of Columbia.
In the case of Kane, plaintiff in error, v. Paul (14 Peters, 33), Paul was appointed in Maryland executor of the will of the deceased whose domicile was in that State. Kane was appointed by the orphans’ court in the District of Columbia administrator with the will annexed — ancillary administrator.
A claim of the deceased against the Government was paid to Kane. Paul brought bis action to recover the money paid to Kane on the ground that the latter’s appointment was without force.
The Supreme Court of the United States held that Paul was entitled to recover of Kane, and that the letter of administration granted to Kane in the District of Columbia, by authority of which he received the money, was no defense.
*538 In United States ex rel. Halstead v. Wyman (2 Mackey, 368), in 1883, the Supreme Court of tlie District of Columbia held that the case of Kane v. Paul, decided in 1840, when the provisions of the act of June 24, 1812, ch. 106, sec. 11 (2 Stat. L., 768), were in force, authorizing foreign administrators, etc., to maintain suits in the District, had no application after 1874 upon the repeal of that act by the adoption of the Devised Statutes of the District of Columbia from which it was omitted.
When in 1887 Congress reenacted the provisions of the act of 1812, the decision of Kane v. Paul became applicable to like cases with the same force and authority as in 1840.
Since the decision of Halstead v. Wyman by the Supreme Court of the District of Columbia in 1883, not only have the provisions of the act of June 24, 1812, been reenacted, but the act of 1887 (the Tucker Act) cited above has been passed, localizing suits on claims against the Government to the district of the claimant’s domicile when not brought before the Court of Claims. Had these statute provisions been in force in 1883 it may be presumed that the opinion of the District court on that point would have been different.
The claimant administrator places much reliance on the decision of the Supreme Court of the United States in Wyman v. Halstead (109 U. S. R., 654, 659), in which it was said: “The United States having in the phrase of Mr. Justice Story ‘an ubiquity throughout the Union,’ may in their discretion, exercised through the appropriate officers, pay a debt due to the estate of a deceased person, either to the administrator appointed in the State of his domicile, or to an ancillary administrator duly appointed in the District of Columbia.”
It must be observed that the court carefully limits the discretion of United States officers to elect which of the two administrators they may pay in such case to “the administrator appointed in the State of his domicile, or to an ancillary administrator duly appointed in the District of Columbia.” Ancillary administration might be granted in the District of Columbia if the deceased had local assets, and if granted on that ground it would also embrace claims against the Government. The decision has no application to an administrator not duly appointed.
It follows from these views that the letters of administration granted to the claimant are void for waut of jurisdiction. His *539 admission to prosecute tbe case is therefore ordered to be stricken out. The origina] petition will stand to await the appearance of an administrator appointed in South Dakota.
Nott, J., did not sit in this case but agreed in the conclusion of the court.