## CHASE *v.* MICHIGAN TELEPHONE CO.

1. CORPORATIONS—SALE OF ASSETS—ASSUMPTION OF OBLIGATIONS.
   Where one corporation acquires in good faith, by purchase, all of the property and franchises of another corporation,— the transaction not amounting to a consolidation,— the purchasing corporation is not liable upon the obligations of the seller, unless made so by statute or by the terms of its agreement.

2. SAME—CONSOLIDATION—EVIDENCE.
   Evidence that the property and franchises of a telephone company were purchased by another company, which was the owner of nearly all of the seller's capital stock, and that after the sale the business was conducted in the same manner as before, without a change of employés, does not show that the new company was a consolidated company, liable for the payment of the obligations of the old.

3. SAME—REFUNDING CAPITAL STOCK—LIABILITY OF STOCKHOLDERS.
   The mere fact that a corporation has sold all its property and franchises to another corporation, owning nearly all of its stock, is not evidence that any of the capital stock has been withdrawn or refunded, within the meaning of 3 How. Stat. § 4161c, providing that, if the capital stock shall be withdrawn and refunded to the stockholders before payment of the debts of the corporation, they shall be liable to creditors for the amount refunded.

4. SAME—FRAUDULENT TRANSFER OF ASSETS—LIABILITY OF TRANS-
   FEREE.
   Before one who claims to have been injured through the negligence of a corporation can obtain satisfaction out of its assets fraudulently transferred to another corporation, he must establish the liability of the transferrer in an action against it.

Error to Ionia; Davis, J.    Submitted October 4, 1899. Decided November 7, 1899.

Case by Rivington S. Chase, an infant, by William F. Soule, his next friend, against the Michigan Telephone

Company, for personal injuries. From a judgment for plaintiff, defendant brings error. Reversed.

Plaintiff, in July, 1894, when 16 years of age, was employed by the Telephone & Telegraph Construction Company at Ionia as a night operator and day messenger. He continued in its employ till May 27, 1895, when he was injured. One Miss Kimball was in charge of the office. During his employment he had been sent out with a lineman to assist in placing and repairing the wires. On May 27, 1895, he had climbed a pole, and stepped out upon the cross-arms, to find a dead wire. He had accomplished his object, and was descending, when he fell and was injured. For that injury he seeks to recover in this case, on the ground of negligence. The Telephone & Telegraph Construction Company had done business in Ionia from 1883 up to August 31, 1895, when it sold and transferred all its property to the defendant. The original declaration was drawn upon the theory that plaintiff was employed by, and was injured while in the employ of, the defendant, and that its negligence caused the injury. Upon the trial, plaintiff was allowed to amend his declaration, charging that plaintiff was employed by the construction company; that the injury occurred through its negligence; that that company had been consolidated, or transferred all its rights, franchises, etc., to the defendant; and that the defendant had assumed all the obligations of the former company, including its liability for torts. Three questions are raised in the case: (1) Does the record show that defendant assumed all the liabilities of the construction company? (2) Was the construction company guilty of negligence? (3) Was the plaintiff guilty of contributory negligence? It is unnecessary to determine the last two questions, as the case must be disposed of upon the first. The court instructed the jury that the defendant was liable for the torts of the construction company.

*Keena & Lightner* (*Morse & Locke*, of counsel), for appellant.

*George E. & M. A. Nichols* (*A. A. Ellis*, of counsel), for appellee.

GRANT, C. J. (*after stating the facts*).  1. Plaintiff introduced a certified copy of a report made by the construction company, filed with the secretary of state, as the law required, that that company had "sold and transferred all of its property and franchises, at private sale, to the Michigan Telephone Company." He also introduced evidence showing that the Michigan Telephone Company owned all but eight shares of the stock of the construction company at and prior to the sale, that all the employés of the construction company were continued in the employment of the Michigan Telephone Company after the sale, and that the business was conducted in the same manner as before. It appeared, however, that billheads and other stationery were changed from the construction company to the Michigan Telephone Company. This constitutes all the evidence in the record in regard to the sale and transfer from the construction company to the defendant.

The fact that the same employés were continued in the employment of the defendant after the transfer, and that its business continued to be carried on the same as before, is without significance, and has no tendency to show consolidation, or assumption of the obligations of the old company. Naturally, there would be no change of employés upon a *bona fide* sale and transfer by corporations of this kind to others. The fact that defendant owned a majority of the stock in the construction company does not tend to show consolidation, or an assumption of the obligations of the vendor. There is no testimony tending to show the terms of that sale. For all that appears, the consideration for the sale had been paid into the treasury of the construction company, to pay its debts and to be divided among its stockholders, and it may still possess ample assets to meet all its obligations. 3 How. Stat. §§ 4904*e*,

4904f, authorize one corporation to sell to another, and provide that the selling corporation shall not be released from any or all of its liabilities previously contracted. By section 4867, 1 How. Stat., a corporation is continued for three years after dissolution, for the purpose of suing and defending suits and for winding up its affairs. The law is well settled in regard to liability of the consolidated or purchasing corporation for the debts and liabilities of the consolidating or selling corporation. Such obligations are assumed (1) when two or more corporations consolidate and form a new corporation, making no provision for the payment of the obligations of the old; (2) when by agreement, express or implied, a purchasing corporation promises to pay the debts of the selling corporation; (3) when the new corporation is a mere continuance of the old; (4) when the sale is fraudulent, and the property of the old corporation, liable for its debts, can be followed into the hands of the purchaser. *Austin* v. *Bank*, 49 Neb. 412. Plaintiff produced no evidence tending to bring the defendant within any of these cases.

Although one person owns a majority of the stock, or all but two shares, or all of it, he does not thereby acquire the right of acting for the corporation, or as the corporation, independently of the directors. 2 Cook, Stock, Stockh. & Corp. Law, § 709; *McLellan* v. *File Works*, 56 Mich. 579, 584; *New Haven Wire Co. Cases*, 57 Conn. 352; *Richmond, etc., Construction Co.* v. *Railroad Co.*, 15 C. C. A. 289, 68 Fed. 105. A corporation, by virtue of being a stockholder in another corporation, is not liable for the acts of the other. *Atchison, etc., R. Co.* v. *Cochran*, 43 Kan. 225 (19 Am. St. Rep. 129). Nor is that fact evidence of merger. *Jessup* v. *Railroad Co.*, 36 Fed. 735. It follows that the defendant, as a stockholder in the construction company, could not act for that company in making this purchase. It could only act through the board of directors of that company. The eight other stockholders were as fully entitled to their share of the property as would be 800, or 1,000, or

half of the stockholders. Even though the shareholders and officers of both corporations be the same, where no intention appears to transfer the old obligations to the new company, the new company is not liable, but creditors must look to the assets of the old company. 2 Mor. Priv. Corp. § 812.

In *Whipple* v. *Railway Co.*, 28 Kan. 474, in January, 1880, three companies consolidated to form the defendant. The articles of consolidation expressly stipulated that the consolidated company should not be liable for the individual debts of the constituent companies, but that such companies should continue in existence for the purpose of adjusting all claims and demands. Plaintiff sued the consolidated company for a tort of one of the consolidating companies. Held, that the original company was alone liable for the demand, and that, if plaintiff had any right against the new company, it was only after judgment rendered against the old. That decision was rendered in 1882. In 1889 the legislature of that State passed an act authorizing the consolidation of railroads, and expressly made the consolidated company "subject to all the obligations and liabilities to the State which belonged to, or rested upon, either of the companies making such consolidation." It was said in the case of *Berry* v. *Railroad Co.*, 52 Kan. 759 (39 Am. St. Rep. 371), that the term "all obligations" might with propriety be applied to all claims, debts, or demands of the original companies; but the court held that, if the statute is not so construed, where two or more railroads consolidate under the statutes of the State, the new company is answerable for all the obligations of the old, in the absence of all evidence or stipulations to the contrary. That was a case of consolidation, and does not overrule the *Whipple Case*. On the contrary, it expressly approves it. Counsel for plaintiff cite *New Bedford R. Co.* v. *Old Colony R. Co.*, 120 Mass. 397. That was a purchase under a statute which expressly made the purchasing company "subject to all the duties, liabilities, obligations, and restrictions of the old

company." We have examined all the authorities cited in support of the plaintiff's contention, and we find that they are cases of consolidations of railroad corporations under statutes, or of purchases pursuant to statute. None of them discuss or determine a question similar to this. None of them support the proposition that a purchasing corporation is responsible for the liquidated or unliquidated claims of the selling corporation, in the absence of statute or agreement. If A. sell his manufacturing plant or business of any kind to B., B. does not thereby assume the debts of A., unless he agrees to. B.'s liability is not affected by the fact that A. or B., or both, are corporations.. The same rule of law applies to both. The mere fact of sale does not establish liability. In *Grenell* v. *Gas Co.*, 112 Mich. 70, the bill was filed to establish a trust in the property of the Michigan Gas Company, transferred to the defendant, which was held liable because it paid nothing for the plant, but gave to the stockholders of that company stock in the new company in payment. Such an arrangement was held to be a diversion of a trust fund. That case does not apply to this. The record is barren of evidence to show a consolidation. It shows only a sale. The *onus probandi* was on plaintiff to show that the purchase was made subject to the obligations of the construction company. Upon this point the record is also barren of evidence. The court should have directed a verdict for defendant.

2. 3 How. Stat. § 4161c, provides :

"If the capital stock of any such corporation shall be withdrawn, and refunded to the stockholders, before the payment of all the debts of the corporation for which such stock would have been liable, the stockholders of such corporation shall be jointly and severally liable to any creditor of such corporation, in an action founded on this statute, to the amount of the sum refunded to him or them respectively."

Plaintiff's counsel urge that the defendant is liable under this statute. There are two obvious replies to this

contention: (1) The declaration is not based upon any such liability; (2) there is no evidence to show that the defendant withdrew its stock from the construction company, or that any of the stock of that company was refunded to it. What the consideration was for the sale, or how it was paid, does not appear. It is left to conjecture. The mere fact that a corporation has sold all its property and franchises to one of its stockholders is not evidence that any of the capital stock has been withdrawn or refunded, under the meaning of this statute.

3. It is unnecessary to discuss the question of negligence. The party upon whom negligence is charged is entitled to be heard in court before negligence is fixed upon it. If this defendant is liable because property of the construction company has been fraudulently transferred to it, then defendant can only be held liable when that liability has been established against the other company by a judgment, which can then be enforced against this defendant, as was done in *Grenell* v. *Gas Co.*, *supra*, and *Grenell* v. *Ferry*, 110 Mich. 262. If it is liable because it has assumed that liability, that fact must first be established. For these reasons, we decline to discuss the question of negligence.

Judgment reversed, and new trial ordered.

MONTGOMERY, HOOKER, and LONG, JJ., concurred. MOORE, J., did not sit.